ANNIE A. MURPHY, administratrix, *vs.* JOHN O'NEIL & another.

Bristol.    October 25, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence,* Employer's liability.    *Employers' Liability Act.    Words,* "Ways, works or machinery."

At the trial of an action by the administrator of an employee of the defendant to recover at common law for conscious suffering of the plaintiff's intestate alleged to have been caused by the breaking of the breeching strap of the harness on a horse which the plaintiff's intestate was driving, there was evidence tending to show that, after the harness had been used for about ten months in all kinds of weather and in the hauling of heavy loads, the breeching strap became worn and was repaired for the defendant by splicing a new piece of leather upon it, that the splicing was on a part of the strap which was around a hook on the shaft, that it appeared sound and good on the outside, but that the life and strength had gone out of the leather and the inside was smooth and it was likely to come apart, that the plaintiff's intestate was driving a heavily loaded team slowly down a grade of about thirty-six feet to the thousand and was looking ahead, when the horse stumbled, the plaintiff's intestate pulled him up gently, the breeching strap broke, a trace slipped off, one rein broke, the horse ran away into an adjoining yard, and the wagon struck a pole and tipped over, causing the injuries which were the subject of the action. It also appeared that it was the duty of the plaintiff's intestate to clean once a week the harness on whatever horse he drove, and that he generally drove a different horse from the one which wore the harness which broke. *Held,* that there was evidence which would have warranted findings that the injury to the plaintiff's intestate was the direct result of the breaking of the strap, due to its defective condition caused by negligence for which the defendant was chargeable, that the plaintiff's intestate was in the exercise of due care and that he had not assumed the risk of such an accident.

The harness on one of several horses used by a wholesale and retail liquor dealer to draw wagons carrying and delivering his goods is not part of the "ways, works or machinery" of such dealer within the meaning of R. L. c. 106, § 71, cl. 1, now embodied in St. 1909, c. 514, § 127, cl. 1.

TORT, with a declaration in four counts, the first alleging that the plaintiff's intestate was employed by the defendants as a teamster and that, because of negligence of the defendants in failing to warn and instruct him with regard to the dangers of his work, he was thrown from a wagon and was injured by reason of the harness breaking, and shortly afterwards died; the second count alleged negligence of the defendants in suffering the wagon and harness to be in a defective condition; the third, under R. L. c. 106, § 71, cl. 1; § 73, alleged a defect in the wagon and harness, as a part of the ways, works or machinery of the defendants, and the fourth count, under R. L. c. 106, § 71, cl. 2; § 73, alleged negligence of a superintendent of the defendants. Writ dated October 21, 1907.

The case was tried before *Raymond*, J. There was evidence tending to show that at about half past seven o'clock in the morning of July 20, 1907, Jeremiah Murphy, the plaintiff's intestate, in the employ of the defendants, was driving a single horse attached to a wagon loaded with forty-two cases of beer, each weighing about fifty-nine pounds, down Orange Street in Fall River, where the grade was thirty-seven and sixteen one hundredths feet in nine hundred and sixty-one feet; that the horse was harnessed to the wagon in the usual way and that nothing appeared wrong with it; that the plaintiff's intestate was driving in the usual way looking straight ahead, and that the horse was going slowly when he stumbled; that Murphy pulled him up, gently, not violently, that the left hand breeching strap broke " where it goes on the iron on the shaft," that then the right hand trace fell, the right rein broke, and the team went into a yard and into a pole and tipped over; that after the breeching strap broke the horse increased his speed and was going very fast and the wagon was coming up against him; that when the wagon struck the pole Murphy was thrown out and struck up against a building, receiving injuries from which he died ten days later.

There also was evidence tending to show that the defendants' drivers cleaned their own harnesses once a week, but that the defendants saw to the repairs. Each horse had a separate harness. At the time of the accident, Murphy was driving a horse called Big Sam. Generally he drove a gray mare. He was driving the gray mare on the day before the accident.

A former employee of the defendants, testifying for the plaintiff, stated that he had driven Big Sam for the defendants up to May 18 preceding the accident; that the harness which broke had been purchased by the defendants in June, 1906, that it was used on the horse in all kinds of weather, carrying loads on the wagons of from thirty to thirty-six cases of beer; that in April, 1907, the breeching straps on the harness were giving way a little so that the defendants sent them to be repaired at a harness shop, that when they were returned they had been spliced and sewn, where formerly they were one piece, the splicing lapping over about two inches on each side; that the splicing came in right on the hook of the shaft; that after they were repaired they appeared to be all right; that he saw the strap after the accident, and that it was broken in the stitching.

A harness maker, qualified as an expert for the plaintiff, testified in substance that it was not a safe and proper thing to splice a breeching strap on the harness described, nor was it a suitable thing to do; that with the wear in the weather and in the manner described the life had gone out of the leather where it was used over the hook and no life was left in that leather; and that the danger in trying to splice leather where the life had gone out of it was that it would wear away; that the stitching would be good on the outside, but that the inside would be smooth and would come apart; that the strength had gone out of the leather.

At the close of all the evidence, the defendants asked the presiding judge to rule that the plaintiff was not entitled to recover, that there was no evidence that Murphy was in the exercise of due care and that there was not sufficient evidence to warrant the jury in finding that the defendants were negligent.

The judge directed a verdict for the defendants on the third count, submitted special questions to the jury on the fourth count, after the answers to which the plaintiff waived that count, and left to the jury the other counts. The jury found for the plaintiff on the second count, that for conscious suffering.

The presiding judge reported the case for determination by this court as stated in the opinion.

*D. F. Slade*, (*F. R. Greene* with him,) for the defendants.

*C. R. Cummings*, (*J. W. Cummings* with him,) for the plaintiff.

SHELDON, J.   This case comes to us upon a report, by which it appears that the plaintiff recovered a verdict upon the second count only of her declaration, for the conscious suffering sustained by Murphy, her intestate, in his lifetime.   The defendants excepted to the refusal of the judge to order a verdict in their favor ; and the plaintiff excepted to the ruling that there was no evidence of a defective condition of any ways, works or machinery of the defendants, and so that she could not recover under the third count of her declaration for the death of Murphy.   No question arises upon the fourth count of her declaration, that having been waived at the trial.

1. While a verdict doubtless might have been returned for the defendants upon the issues of the due care of Murphy and of their negligence, yet we are of opinion that these questions were for the jury.   There was evidence that the harness had become worn, and that the breeching straps had been spliced; that this ought not to have been done ; that they appeared good and sound upon the outside, but that the life, the strength, was gone out of the leather, and the inside was smooth and it was liable to come apart.   As to both of the main questions involved, the case comes under the rule of *Lundergan* v. *Graustein & Co.* 203 Mass. 532, decided since this case was argued, *Palmer* v. *Coyle*, 187 Mass. 136, and *Jones* v. *Pacific Mills*, 176 Mass. 354.   For the same reasons it was for the jury to say whether Murphy had assumed the risk of the accident that happened.   The jury could find that the horse's running away and the injury to Murphy were the direct result of the breaking of the strap, that this was due to its defective condition, that the defendants were at fault for the existence of this defective condition, and that Murphy himself was in the exercise of due care and had not assumed the risk of what happened.

2. The plaintiff's exceptions make it necessary to determine whether the harness of the horse which Murphy was driving was a part of the " ways, works or machinery " of the defendants within the meaning of those words as used in R. L. c. 106, § 71, cl. 1, now embodied in St. 1909, c. 514, § 127, cl. 1.   The defendants were wholesale and retail liquor dealers, and employed five drivers and several horses and wagons to carry and deliver their goods.   Murphy was one of these drivers, and the

accident occurred while he was driving a horse attached to a delivery wagon of the defendants, being then at work in their employ and engaged in their business.

It was held in *Yarmouth* v. *France*, 19 Q. B. D. 647, that under the English employers' liability act then in force a horse used by a wharfinger in his. business of delivering goods from his wharf to the houses. or stores of his customers was a part of the wharfinger's plant, and that a vice of such a horse rendering it unfit to be used in the business was a defect in the plant within the meaning of that act. But that decision does not help this plaintiff; for our statute, though largely following the act which was there considered, makes employers liable for defects only in their ways, works and machinery, and not, under the statute, in their plant. And Lindley, L. J., considered in that case (p. 658) that the chief difficulty in holding that the horse was a part of the plant arose from the use in the act of the words " defect " and " ways and machinery." Nor is the plaintiff's contention helped by our own decisions as to the meaning of the word " machinery " in the various connections in which it has been used. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. *Seavey* v. *Central Ins. Co.* 111 Mass. 540. *Bowers* v. *Connecticut River Railroad*, 162 Mass. 312. *McKay* v. *Hand*, 168 Mass. 270. *Gunn* v. *New York, New Haven, & Hartford Railroad*, 171 Mass. 417, 422. *Nordquist* v. *Fuller*, 182 Mass. 411. *Boucher* v. *Robeson Mills*, 182 Mass. 500. *Higgins* v. *Higgins*, 188 Mass. 113. In none of these decisions was the word " machinery " made to include anything which was not either a part of some machine by which power was created or applied, or used in connection with such a machine, or which was not one of the fixed devices or instrumentalities used in the manufacture or distribution of a product, or a mechanical device or apparatus constructed, adapted and used as a means of accomplishing some definite object. Nor do we find a broader signification given to this word in any of the decisions in other States to which our attention has been called. The plaintiff relies somewhat upon the language of the court in *Georgia Pacific Railway* v. *Brooks*, 84 Ala. 138. It was held in that case that a hammer used for driving spikes into cross ties on a railroad bed to hold the rails in place was not included in the

word "machinery" in the employers' liability act of that State. But the court, after saying that that word primarily meant the works of a machine, the combination of the several parts to put it in motion, added that the word in that statute had a broader signification. Clopton, J., speaking for the full court, said: "Thus understood, the term 'machinery' embraces all the parts and instruments intended to be [operated], and actually operated from time to time, exclusively by force created and applied by mechanical apparatus or contrivance, though the initial force may be produced by the muscular strength of men or animals, or by water or steam, or other inanimate agency." It may be that a treadmill and all of its parts, whether operated by a horse or a man, could be included within this definition; but it would be hard to extend it so as to include either the rope by which a man might pull a log along the floor of a mill or the harness by means of which a horse would draw a load upon a street. See also *State* v. *Avery*, 44 Vt. 629; *Alvord Carriage Manuf. Co.* v. *Gleason*, 36 Conn. 86; *East Tennessee Railroad* v. *Thompson*, 94 Ala. 638; *Fairbank & Co.* v. *Cincinnati, New Orleans & Texas Pacific Railway*, 81 Fed. Rep. 289; *Stearns* v. *Russell*, 85 Fed. Rep. 218, 224; and the cases collected in 25 Cyc. 1661. If the construction contended for by the plaintiff is to be adopted, it must be not upon authority but on account of its inherent reasonableness.

Words and phrases used in our statutes are to be construed according to the common and approved usage of the language. R. L. c. 8, § 4, cl. 3. The definition of the word "machinery" given in Worcester's dictionary, so far as here material, is "mechanical combinations of parts for creating or for applying power in engines or machines." In the Century dictionary it is defined as "the parts of a machine considered collectively; any combination of mechanical means designed to work together so as to effect a given end; as the machinery of a watch, or of a canal lock." In the New English dictionary, when used in this sense it is defined as "machines, or the constituent parts of a machine, taken collectively; the mechanism or 'works' of a machine or machines"; and as "a system or a kind of machinery." By neither of these definitions nor by the common and approved usage of language could the harness of a delivery wagon be

called machinery, just as neither the horse nor the wagon alone, nor both of them together, with the harness by which the one is attached to the other, naturally could be called a machine. It would be a strain upon language as commonly used and understood. In our statute the word must, we think, be taken to include such machines or mechanical devices as are in use and such additions thereto or appurtenances thereof as are found to be used in connection therewith or as incidental to the use thereof, and not to have any broader signification.

The plaintiff's counsel have not contended that this harness could be said to be a part of either the ways or the works of the defendants; and we are of opinion that such a contention could not have been sustained.

It follows that the exceptions of both parties must be overruled; and in accordance with the terms of the report judgment must be entered for the plaintiff upon the verdict which was found in her favor upon the second count.

*So ordered.*