ASSESSORS OF BROCKTON *vs.* BROCKTON OLYMPIA REALTY CO. (and a companion case between the same parties).

Suffolk.   November 4, 1947. — February 4, 1948.

Present: QUA, C.J., DOLAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Taxation,* Personal property tax: machinery, exemption.   *Theatre.* *Words,* "Machinery."

Certain projection equipment, sound reproducing equipment, and a three kilowatt generator and an induction motor used for operation of an organ, owned by a domestic business corporation and used in the conduct of its business in operating a motion picture theatre, were "machinery" under G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, and § 18, Second, and were subject to local taxation.

APPEALS from decisions of the Appellate Tax Board.

*E. Blumberg,* (*H. C. Gill,* City Solicitor, with him,) for the assessors of Brockton.

*A. E. Whittemore,* for the taxpayer.

SPALDING, J.   These are appeals by the board of assessors of Brockton from decisions of the Appellate Tax Board (hereinafter called the board) abating taxes assessed for the year 1944 upon certain personal property owned by the taxpayer.   The issue is whether this property was taxable locally as "machinery used in the conduct of the business" under G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, as appearing in St. 1941, c. 467; and § 18, Second, as appearing in St. 1936, c. 362, § 2.

The taxpayer, a domestic business corporation as defined in G. L. (Ter. Ed.) c. 63, § 30, on January 1, 1944, operated two motion picture theatres, the Brockton and the Rialto, in the city of Brockton.   On that date it owned the following property in the Brockton: projection equipment, sound reproducing equipment, and a three kilowatt generator and an induction motor used for the operation of an organ. [1] At that time it also was the owner of projection and sound reproducing equipment in the Rialto, which was essentially the same as that in the Brockton.

"The following parts comprise the projector and sound reproduction equipment: a lamp housing which contains a carbon arc light . . .; lenses . . . which act to concentrate the light on the aperture; a shutter which interrupts the light beam at rapid intervals; an upper reel housing which holds the reel of film that is to be run through the projector; an upper feed sprocket which unwinds the film from the upper reel and maintains a loop of film above the picture gate; this sprocket runs at a constant speed and is connected with a constant speed motor located at the base of the mechanism; an intermittent mechanism sprocket, motion of which is such that the picture is permitted to remain stationary during the interval when it is being projected on the screen; a lower or hold-back sprocket which serves to maintain the proper loop below the film gate and to keep the film moving at a constant speed; this sprocket is electrically connected with the same constant

---

[1] It also owned two ventilator fans and two suction fans and the motors that operated them, but these need not concern us, for the assessors now concede that these ought not to be taxed as personal property and that the abatement of the tax on this property was proper.

speed motor that operates the upper feed sprocket; a lower reel housing which contains the take-up reel; the take-up reel is operated on a friction principle so as to maintain the constant speed of the unwinding of the film as the pictures are projected upon the screen; a sound head which contains the optical unit and a photo electric cell and several sprockets; the sprockets are electrically connected with the same constant speed motor as the other sprockets described and serve to maintain the unwinding of the film past the scanning point at the same constant speed; the sound is reproduced by means of a beam of light concentrated upon a sound track which is photographed along the edge of the films; these light impulses are, in turn, converted into electrical impulses by means of the photo electric cell and the electric impulses are then carried along wires into a series of loud speakers." This equipment is "fastened by bolts to a base which is held in place on the floor . . . by four lag bolts which can be unscrewed simply by the use of a wrench." To remove the equipment "all that would be necessary would be to disconnect the bolts from the floor . . . ."

The three kilowatt generator and the induction motor used for the organ are located underneath the stage. The motor is a small induction motor which operates the generator that "converts alternate current to the direct current required by the organ keyboard." It also operates the blower "which puts air into the organ pipes." "The motor rests on a couple of scantlings and is bolted down with four lag screws, or bolts."

After finding the foregoing facts, the board (one member dissenting) found as a fact and ruled as matter of law that none of the equipment described above was machinery used in the conduct of the taxpayer's business, and held that it was not taxable locally under the provisions of § 5, Sixteenth, and § 18, Second, of G. L. (Ter. Ed.) c. 59.

General Laws (Ter. Ed.) c. 59, § 5, Sixteenth, so far as here material, exempts from local taxation " . . . property, other than real estate, poles, underground conduits, wires and pipes, *and other than machinery used in the conduct of*

*the business,* owned by domestic business corporations or by foreign corporations, as defined in section thirty of chapter sixty-three . . ."[1] (emphasis supplied).    Section 18, Second, of c. 59 provides that "in the case of domestic business and foreign corporations as defined in section thirty of chapter sixty-three, *machinery used in the conduct of the business,* shall be assessed where such machinery . . . is situated to the owner or any person having possession of the same on January first" (emphasis supplied).    Under these provisions it is plain that if the property in question was "machinery used in the conduct of the [taxpayer's] business" it was not exempt from local taxation.

The words above italicized were inserted in the above mentioned sections by St. 1924, c. 321, and, it seems, have never been construed by this court.    Prior to the amendment of 1924 a corporation of the class to which the taxpayer belongs could be taxed locally only on such of its machinery as was "used in manufacture or in supplying or distributing water."    G. L. c. 59, § 5, Sixteenth.    The taxpayer argues that the word "machinery" in our taxing statutes has heretofore connoted that which was fixed and bulky, and capable of "work on a large scale of the kind done in manufactories," and that the purpose of the 1924 amendment was to reach the kind of mechanism which was like manufacturing machinery (for example, laundry machinery and machinery used for repair work) but was not taxed locally.    In support of this contention the taxpayer cites *Lowell* v. *County Commissioners of Middlesex,* 152 Mass. 372, where it was said at page 377, "There are intimations in our reports that by machinery, in the provisions of the statute we are considering, is meant machinery in some manner affixed to real property."    That statement was made in construing a statute (Pub. Sts. c. 11, § 20, Second) which provided that "All machinery employed in any branch of manufactures shall be assessed where such machinery is situated or employed."    It is not,

---

[1] The statute provides "that the term 'machinery used in the conduct of the business' shall not, as herein used, be deemed to include stock in trade." See *New England Mutual Life Ins. Co.* v. *Boston,* 321 Mass. 683.    No contention is made that the property in question comes within this exception.

we think, of any assistance in determining the meaning of the word "machinery" in the statutes under consideration.

Whatever may have been included in the word "machinery" in other taxing statutes, we are of opinion that in the statutes before us it is not to be given such a narrow construction as that for which the taxpayer contends. See *Murphy* v. *O'Neil*, 204 Mass. 42, 46–47; *Hawkins* v. *Frick-Reid Supply Corp.* 154 Fed. (2d) 88 (C. C. A. 5). Possibly, as the taxpayer has argued, the word "machinery" as used in G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, and § 18, Second, is not the equivalent of "machine" or "mechanism." See *Seavey* v. *Central Mutual Fire Ins. Co.* 111 Mass. 540, 541. Compare *Murphy* v. *O'Neil*, 204 Mass. 42, 46–47. Perhaps there may be mechanical devices that a corporation might employ which are not machinery. But it will be time enough to decide those questions when they arise.

Words and phrases used in our statutes (with the exception of those which are technical or have acquired a peculiar meaning in law) "shall be construed according to the common and approved usage of the language." G. L. (Ter. Ed.) c. 4, § 6, Third. The word "machinery" has been defined by lexicographers as "machines, or the constituent parts of a machine, taken collectively; the mechanism or 'works' of a machine or machines," and as "the parts of a machine considered collectively; any combination of mechanical means designed to work together so as to effect a given end." We are of opinion that by the common and approved usage of the language the property in question was "machinery" within the intendment of the statute. We are also of opinion that the board's findings establish that it was used in the conduct of the taxpayer's business. It was, therefore, subject to local taxation under G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, and § 18, Second.

It follows that the decision of the board, in so far as it abated the tax on this property, was erroneous. The board, however, did not deal with the question of its valuation. The cases are therefore remanded to the board so that it can determine the value of the property subject to tax.

*So ordered.*