LOWELL GAS COMPANY & another *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

Suffolk. December 7, 1978. — February 6, 1979.

Present: QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Taxation,* Sales and use tax: exceptions; Gas company. *Statute,* Construction. *Words,* "Furnishing," "Machinery."

Gas mains, gas services, gas meters, and meter installations installed by a gas company as components of their gas distribution systems were exempt from sales and use taxes under the provisions of G. L. c. 64H, § 6(s), and c. 64I, § 7(b). [257-263]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 2, 1978.

The case was reported by *Kaplan, J.*

*Robert J. McGee* for the plaintiffs.

*E. Michael Sloman,* Assistant Attorney General, for the defendant.

*Walter S. Robbins*, for Haverhill Gas Company, amicus curiae, submitted a brief.

LIACOS, J. Lowell Gas Company and Cape Cod Gas Company (plaintiffs) challenge the assessment by the Commissioner of Corporations and Taxation (defendant) of sales and use taxes on the purchase of gas mains, gas services, gas meters and meter installations installed by plaintiffs as components of their gas distribution systems. The plaintiffs filed a complaint in the county court under G. L. c. 231A seeking declaratory and injunctive relief. A single justice reserved and reported the matter on the pleadings and a statement of agreed facts. The single issue presented is whether the scope of G. L. c. 64H, § 6(s)[1] which, in pertinent part, exempts from the sales tax "sales of machinery, or replacement parts thereof, used directly and exclusively . . . in the furnishing of gas, water, steam or electricity when delivered to consumers through mains, lines or pipes," extends to the items in question here.[2]

In 1966, following the original enactment of G. L. c. 64H, § 6(r)[3] and § 6(s) (enacted temporarily by St. 1966,

---

[1] Since G. L. c. 64I, § 7(b), as amended through St. 1969, c. 558, § 3, exempts from use tax, with stated exceptions not relevant here, "[s]ales exempt from the taxes imposed under chapter sixty-four H," our discussion will focus on the ambit of c. 64H, § 6(s).

[2] A list of those items, with their descriptions, follows:

(a) gas "mains" are large diameter pipes for the distribution of gas from storage tanks to individual "services";

(b) gas "services" are small diameter pipes leading from gas mains to the meter on the customers' premises;

(c) gas "meters" are devices to measure and record the amount of gas, from a "service," entering the customer's internal pipes or lines, through which the gas flows to points of actual use; and

(d) meter "installations" are structures of wood or metal, on the customer's premises, which support a gas meter or by means of which a gas meter is attached to a wall.

The phrase "pipes and meters" when used hereinafter will refer collectively to all the disputed items listed.

[3] As originally added by St. 1966, c. 14, § 1, G. L. c. 64H, § 6(r) read, in pertinent part, as follows: "§ 6. Exemptions.—The following sales

c. 14, § 1, continued by St. 1967, c. 757, § 1, and subsequently amended by St. 1971, c. 555, § 45), the then Commissioner of Corporations and Taxation issued a document[4] which specifically exempted the disputed items from the reach of sales or use taxation.[5] Under that ruling, the plaintiffs have not paid sales or use taxes with respect to these items. The defendant now takes the position that the 1966 ruling is incorrect under present law; accordingly, he has assessed sales or use tax on the items in question, and intends to assess such taxes in the future. The parties have agreed that "[l]iability for tax upon the disputed items will have a direct effect upon gas utility rates to be charged by the plaintiffs."

We hold that pipes and meters constitute "machinery ... used directly and exclusively ... in the furnishing of gas ... when delivered to consumers through mains, lines or pipes," and, as such, are exempt from sales and use tax.

The defendant raises a number of arguments to support his view that pipes and meters are not "machinery" for the purposes of the G. L. c. 64H, § 6(s), exemption. The

---

and the gross receipts therefrom shall be exempt from the tax imposed by this section:

"(r) Sales of materials, tools and fuel, or any substitute therefor, which become an ingredient or component part of tangible personal property to be sold or which are consumed or used directly ... in the furnishing of gas, water, steam or electricity when delivered to consumers through mains, lines or pipes."

[4] According to the statement of agreed facts, "[t]his document was a 'ruling' or 'determination letter' of the State Tax Commission, and was not a 'regulation' of the State Tax Commission issued under G. L. c. 14, § 4 (as amended by St. 1954, c. 681, § 3). No 'regulation' dealing directly with this subject has been issued by the State Tax Commission pursuant to its statutory authority." Hereafter, we shall refer to the document as a "ruling."

[5] The ruling did not specify whether the contested items were exempt under § 6(r), § 6(s), or both. See discussion, infra at 262-263. General Laws c. 64H, § 6(r), was amended subsequently, however, so as clearly to exclude from coverage the items in controversy. See St. 1971, c. 555, § 45. The plaintiffs here rely only on § 6(s) in claiming exempt status for pipes and meters.

defendant contends that under G. L. c. 64H, § 6(s), components of gas distribution systems, such as the items in controversy, do not share the exemption from sales and use taxation accorded to production, storage and pressure regulating equipment for the reason that the former are not defined properly as "machinery" within the meaning of the statute. As part of his argument he cites cases which we consider inapposite. The cases cited interpret statutes which refer not to machinery used in the "furnishing" of various commodities (gas, water, electricity), but rather to the use of such equipment in "manufacturing" or "production." See, e.g., *Coffin* v. *Artesian Water Co.*, 193 Mass. 274, 276 (1906) (distribution system of a water supply company is not "machinery employed in manufactures"); *Niagara Mohawk Power Corp.* v. *Wanamaker*, 286 App. Div. 446, 451 (1955), aff'd 2 N.Y.2d 764 (1956) (transformers used in the distribution of electricity are not within the exemption for property used in "production"); *Peoples Gas & Elec. Co.* v. *State Tax Comm'n*, 238 Iowa 1369, 1385 (1947) (gas and electricity distribution systems are not "directly used in manufacturing" for the purpose of the sales tax exemption). While machinery employed in a gas distribution system reasonably may be excluded from the reach of a statute which provides tax exemption for gas production or manufacturing equipment only, the Legislature declined to use such limiting terms when it enacted the relevant portion of c. 64H, § 6(s).[6]

---

[6] It is worth noting that while the Legislature took pains to delimit and define "machinery . . . used directly and exclusively . . . in an industrial plant in the actual manufacture, conversion or processing of tangible personal property to be sold" when it amended c. 64H, § 6(s), by St. 1971, c. 555, § 45, it made no such effort with respect to "machinery . . . used directly and exclusively . . . in the furnishing of gas . . . when delivered to consumers through mains, lines, or pipes." The Legislature is presumed to have been aware of the Commissioner's 1966 ruling, and that it was ambiguous as to whether § 6(r), § 6(s), or both provisions formed the statutory basis for exemption of listed items, including those in controversy. It chose to make clear,

"We have recognized that the scope of these exemptions is somewhat uncertain. *Wakefield Ready-Mixed Concrete Co.* v. *State Tax Comm'n*, 356 Mass. 8, 10 (1969). There is no requirement that this type of exemption be interpreted narrowly. *Id.* at 12. *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation*, 358 Mass. 563, 569 (1971)." *Ace Heating Serv., Inc.* v. *State Tax Comm'n*, 371 Mass. 254, 255-256 (1976). No persuasive reason appears for narrowing the scope of the exemption in the manner suggested by the defendant.

We view the Legislature's use of the term "furnishing"[7] as denoting operations distinct from those delineated by the words "manufacturing" or "production," i.e., as including the distribution function.[8] In arriving at this conclusion, we adhere to the principle that "[a] taxing statute should receive a practical construction." *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation, supra* at 571, quoting from *Niagara Mohawk Power Corp.* v. *Wanamaker, supra* at 449. Just as we determined in *Courier Citizen Co., supra* at 572, that "[t]he integrated process of

through St. 1971, c. 555, § 45, that such items as pipes and meters were not included within the scope of § 6(*r*). See note 5, *supra.* It did not, however, give any further indication as to whether the contested items constituted "machinery ... used ... in the furnishing of gas" for the purpose of § 6(*s*). While we have been called on to resolve the question presented in the absence of further clarification by the Legislature, nothing we say here forecloses that body from acting with regard to this issue should it so choose.

[7] Webster's Second Int'l Dictionary 1021 (2d ed. 1959), includes as definitions of "furnish": "2. to provide for; to provide what is necessary for ... 4. to provide; supply; give; afford." Cf. Black's Law Dictionary 804 (4th rev. ed. 1968) ("To supply or provide").

[8] The defendant argues that the inclusion, in the portion of § 6(*s*) at issue in this case, of the phrase "when delivered to consumers through mains, lines or pipes" indicates an intention by the Legislature to include as exempt only machinery utilized in the production of gas and not that employed in the distribution function. We discern no reason for such an interpretation. Rather, we view the quoted phrase as denoting a distinction between machinery used by utilities which employ main, pipe, or line delivery systems from that of utilities which use bottling or other delivery systems.

modern printing cannot reasonably be reduced to fragments or segments" (adopting an expansive view of what printing equipment constitutes "machinery . . . used directly . . . in the manufacture . . . of tangible personal property to be sold" within the meaning of c. 64H, § 6 [s]), so do we find that the process of "furnishing" gas does not terminate at the storage tank. Applying the functional approach set forth in *Niagara Mohawk Corp.*, and embraced in *Courier Citizen Co.*,[9] we view as particularly pertinent the following basic question: "Does the disputed item operate harmoniously with the admittedly exempt machinery to make an integrated and synchronized system?" Pipes and meters[10] function, along with produc-

---

[9] While the courts in *Niagara Mohawk Power Corp.* and *Courier Citizen Co.* were interpreting provisions exempting from sales tax equipment used in "production," and "manufacture," respectively, the functional analysis employed in those cases for determining which items warranted exemption is no less applicable to the provision under scrutiny here. Nor is the validity of this mode of analysis undercut by the Legislature's removal from exemption, by means of the amendments added by St. 1971, c. 555, § 45, certain items held to be included within the scope of § 6(s) in *Courier Citizen Co.* v. *Commissioner of Corps. & Taxation*, 358 Mass. 563 (1971). See R. Barrett & A. Bailey, Taxation § 1341 (2d ed. 1970). Cf. *Rowe Contracting Co.* v. *State Tax Comm'n*, 361 Mass. 158, 164 (1972).

[10] The defendant in his brief attempts to distinguish meters and meter installations from pipes, claiming that "[t]he lack of a direct operational function of the meter in the delivery of gas renders the machinery exemption inapplicable." Viewing such hairsplitting by the defendant as inappropriate, we find *Commonwealth* v. *Equitable Gas Co.*, 415 Pa. 113 (1964), to be instructive. In that case, meters were held to be used directly in the operation of "producing, delivering or rendering of a public utility service," and were, therefore, exempt from sales taxation pursuant to Pa. Stat. Ann. tit. 72, § 3403-2(n)(4)(c)(iii) (Purdon, 1964) (repealed; replaced by Pa. Stat. Ann. tit. 72, § 7201[o][4][B][iii] [Purdon, 1978]). The court stated: "The Commonwealth concedes that property used in delivering gas or electricity up to the point of entry into the meter is used directly in the operation of a public utility service and is not taxable. However, the Commonwealth argues that equipment used beyond that point, including the meter itself, is not part of the operation of the service . . . . The position of the Commonwealth is unrealistic and unsupportable. Its weakness is that it fails to give adequate consideration to the physical and

tion, storage, and pressure regulating equipment, as integral component parts required in the gas furnishing system.[11]

---

practical circumstance that only by transmission of the energy to and through the meter is the gas or electricity actually made available for the customer's use in the only legally permitted way. It is only in metered form that appellants may furnish and the customer may utilize this service." *Id.* at 118. Although we have found no statute which explicitly requires that gas be furnished to customers through meters, the essential principles set forth in *Equitable Gas Co.* appear to apply in this Commonwealth as well. See generally, e.g., G. L. c. 164, §§ 75A, 103, 104, 112-117, 119.

[11] Our inclusion of distribution apparatus as "machinery" within the meaning of § 6(*s*) is consistent with holdings of this court in other contexts. For example, in *Commonwealth* v. *Lowell Gas Light Co.,* 12 Allen 75 (1866), the court considered whether or not, for the purpose of taxing the excess of the market value of its stock over the value of its real estate and machinery, mains and pipes were "machinery." The court stated, at 78-79: "On this question, it seems to us that there is no room for serious doubt. The corporation is established, in the words of the act creating it, 'for the purpose of manufacturing and disposing of gas in the city of Lowell.' The mains or pipes laid down in the streets and elsewhere to distribute the gas among those who are to consume it were clearly a part of the apparatus necessary to be used by the corporation in order to accomplish the object for which it was established. They constituted a part of the machinery by means of which the corporate business was carried on, in the same manner as pipes attached to a pump or fire-engine for the distribution of water, or wheels in a mill which communicate motion to looms and spindles, or the pipes attached to a steam-engine to convey and distribute heat and steam for manufacturing purposes, make a portion of the machinery of the mill in which they are used. Indeed, in a broad, comprehensive and legitimate sense, the entire apparatus by which gas is manufactured and distributed for consumption throughout a city or town constitutes one great integral machine, consisting of retorts, station-meters, gas-holders, street-mains, service-pipes and consumers' meters, all connected and operating together, by means of which the initial, intermediate and final processes are carried on, from its generation in the retort to its delivery for the use of the consumers. No satisfactory reason has been suggested by the attorney general for excluding any part of the value of this apparatus from the deduction which the tax commissioners are required to make for the machinery of the corporation properly taxable in the city where it is established, and we have been unable to see any plausible ground for refusing to make such deduction."

See *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 562-565

Finally, we adhere to the view that "where the language of a statute is vague or permits more than one reasonable interpretation, contemporary administrative construction, especially if long continued, is of significance. *Assessors of Holyoke* v. *State Tax Comm'n,* 355 Mass. 223, 243-244 (1969)." *Ace Heating Serv., Inc.* v. *State Tax Comm'n,* 371 Mass. 254-256 (1976). See *Cleary* v. *Cardullo's, Inc.,* 347 Mass. 337, 343 (1964). In construing St. 1966, c. 14, § 1 (6)(*r*) and (*s*), contemporaneously with its enactment, the then Commissioner of Corporations and Taxation explicitly included as exempt the items in controversy here. That interpretation was followed consistently by various Commissioners until now.

The defendant argues that the interpretation given the statute by the Commissioner in 1966 is not helpful in resolving the present controversy "because it is unclear whether the exemption originally extended to the disputed items was predicated upon their status as machinery, within the scope of G. L. c. 64H, § 6(*s*), or as 'materials . . . which are consumed and used directly . . . in the furnishing of gas, water, steam or electricity,' under G. L. c. 64H, § 6(*r*)." The defendant contends that in 1966 the Commissioner might have based his exemption of the contested items on his reading of § 6(*r*), and that, since we do not know which section was in fact relied on as the basis for exemption of these items, the ruling is not definitive with regard to § 6(*s*).

We do not interpret the 1966 ruling with respect to the items in controversy as having been based on § 6(*r*), for two reasons. First, the original § 6(*r*), see note 3, *supra,* like the currently effective amended version, appears clearly to refer to materials of a generally consumable variety, and not to such more durable fixtures as pipes

(1956); cf. *Assessors of Brockton* v. *Brockton Olympia Realty Co.,* 322 Mass. 351, 355 (1948) (the definition of "machinery" may include "the parts of a machine considered collectively; any combination of mechanical means designed to work together so as to effect a given end").

and meters. Second, we take notice of the fact that although the Legislature in 1971 limited the scope of § 6(*r*) by specifying that the maximum useful life of covered items was one year, see St. 1971, c. 555, § 45, and thereby made clear that pipes and meters were not included, the Commissioner of Corporations and Taxation did not at that time revise the 1966 ruling so as to remove the controverted equipment from the exempt list. His failure to do so, and the continued application of the original list for several years thereafter, can be viewed as at least tacit recognition by the Department of Corporations and Taxation that the 1966 ruling exempting the disputed items was in fact based on § 6(*s*), and not on § 6(*r*).

For the foregoing reasons, we hold that each of the items in dispute, listed in n.2, falls within the exemption provided by G. L. c. 64H, § 6(*s*), and also that provided by G. L. c. 64I, § 7(*b*). The case is remanded to the county court for the entry of a judgment declaring the rights of the parties in accordance with this opinion.

*So ordered.*