ASSESSORS OF HAVERHILL *vs.* J. J. NEWBERRY CO.
(and a companion case[1]).

Suffolk.    October 6, 1953. — October 30, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

·*Taxation*, Personal property tax: machinery, exemption. *Store. Words*, "Machinery."

Any mechanical device which can fairly be said to be a machine, whether or not similar to those employed by manufacturing corporations, is "machinery" within the meaning of that word in the phrase "machinery used in the conduct of the business" in G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, as amended. [471–472]

The following property owned by a foreign business corporation and used in its operation of a retail department store and of a lunch counter in connection with the store was "machinery" within the meaning of that word in the phrase "machinery used in the conduct of the business" in G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, as amended: dispensers connected to a carbonator, soda fountains connected to a carbonator and to a cooling system operated through refrigerator units, a rotating type toaster, a potato peeler, a dishwashing machine, a slicer, a mixing machine, cash registers, a calculating machine, typewriters, a marking machine for printing tags and attaching them to garments, a type setting machine, electric fans attached to the ceiling, an electrically operated deep freeze unit, and an electric refrigerator; — the following property so owned and used was not "machinery" within the statute: a standard type safe, small balance type candy scales, a steam table, a fudge heater, a Silex unit for making coffee, and a grill. [473–475]

---

[1] The companion case is by J. J. Newberry Co. against Assessors of Haverhill.

APPEALS from decisions by the Appellate Tax Board.

*Samuel Markell,* for the taxpayer.

*Salvatore Faraci,* City Solicitor, for the assessors, submitted a brief.

SPALDING, J. These are appeals by the board of assessors of Haverhill and the J. J. Newberry Co., hereinafter called the taxpayer, from decisions of the Appellate Tax Board, hereinafter called the board, in two cases granting in part and denying in part abatement of taxes assessed for 1950 and 1951 upon certain personal property owned by the taxpayer. Since both cases present the same basic issue and were considered together by the board, they will be so considered here.

The question for decision is whether certain personal property of the taxpayer was taxable locally as "machinery used in the conduct of the business" within G. L. (Ter. Ed.) c. 59, § 5, Sixteenth, as appearing in St. 1941, c. 467.

Findings of the board include the following: The taxpayer is a foreign business corporation as defined in G. L. (Ter. Ed.) c. 63, § 30, as amended, and operates a retail department store in Haverhill in which it sells the sort of merchandise usually found in such stores. In connection with the store it also operates a lunch counter. As of January 1, 1950, and 1951, the taxpayer owned and used at its store the property which is the subject matter of this controversy, namely, cash registers, typewriters, safe, calculating machine, soda fountains, dispensers, scales, steam table, Silex unit, toaster, grill, fudge heater, deep freeze, potato peeler, dishwasher, refrigerator, mixing machine, slicer, cooling fans, marking machine, and type setting machine.

The assessors considered all of this property to be "machinery used in the conduct" of the taxpayer's business and therefore not within the exemption provided by § 5, Sixteenth, of c. 59. As to seven items, namely, the dispensers, soda fountains, toaster, potato peeler, dishwasher, slicer, and mixer, the board agreed with the assessors. As to the remainder, the board was of opinion that it was not

"machinery" and was therefore exempt. The decision of the board did not satisfy either party and each has appealed.

General Laws (Ter. Ed.) c. 59, § 5, Sixteenth, so far as here material, exempts from local taxation ". . . property, other than real estate, poles, underground conduits, wires and pipes, and *other than machinery used in the conduct of the business*, owned by . . . foreign corporations, as defined in section thirty of chapter sixty-three" (emphasis supplied). The words "machinery used in the conduct of the business" first came into § 5, Sixteenth, by St. 1924, c. 321, § 1. Prior to that time the statute permitted the taxation of machinery locally only to the extent that it was "used in manufacture." G. L. c. 59, § 5, Sixteenth, as amended by St. 1921, c. 486, § 16. The purpose of the 1924 amendment was to extend local taxation to machinery used by nonmanufacturing business corporations. The taxpayer does not argue the contrary but suggests that the machinery to be taxed was to be of the same type as that used by manufacturing corporations. In other words, the statute, it is urged, was designed to remedy the situation brought about by several decisions of this court holding that the machinery of certain corporations was exempt from local taxation because they were not engaged in manufacturing although the machinery involved was quite similar to that employed by manufacturing corporations.[1] To impute such an intent to the Legislature would be sheer conjecture. We find nothing in the legislative history of the statute to support it. In *Assessors of Brockton* v. *Brockton Olympia Realty Co.* 322 Mass. 351, where substantially the same contention was considered and rejected, we held that the word "machinery" must be construed in accordance with the common and approved usage of the language.

The only decisions interpreting the language of the statute under consideration are the *Olympia* case, just mentioned,

---

[1] Such decisions are *Hittinger* v. *Westford*, 135 Mass. 258 (ice cutting), *Wellington* v. *Belmont*, 164 Mass. 142 (quarrying of stone), and *Barron* v. *Boston*, 187 Mass. 168 (printing a newspaper).

and *Collector of Taxes of Boston* v. *Cigarette Service Co. Inc.* 325 Mass. 162. In the *Olympia* case we held that projection equipment, sound reproducing equipment, a generator and an induction motor for operation of an organ, used in operating a motion picture theatre, were "machinery" within the purview of the statute. In the *Cigarette Service* case we held that cigarette vending machines were "machinery." In the *Olympia* case we said, "Possibly . . . the word 'machinery' as used in G. L. (Ter. Ed.) c. 59, § 5, Sixteenth . . . is not the equivalent of 'machine' or 'mechanism.' . . . Perhaps there may be mechanical devices that a corporation might employ which are not machinery. But it will be time enough to decide those questions when they arise" (page 355). These questions, or at least some of them, are now before us.

Speaking broadly, we are of opinion that a mechanical device which can fairly be said to be a machine must be treated as "machinery" under the statute. To hold otherwise would render the statute unworkable. Until a given machine had been passed on by the board or this court, no one could say with any certainty whether it was or was not "machinery." To say that one machine was "machinery" and another was not would often result in hair splitting distinctions which would be difficult, if not impossible, to reconcile. Each classification made by the board or court would be an invitation to litigate in the next controversy, for there would always be the hope that the device involved would fall on the other side of the line. Numerous decisions instead of bringing certainty into the statute would only create confusion. It is to be remembered that this is a taxing statute which has to be administered in a practical way by local boards of assessors. To place a construction on it that would challenge the dialectic ingenuity of a medieval philosopher could hardly have been intended by the Legislature. Even under our construction there will still be difficulties. In these days when so many things are done with the aid of mechanical devices of one sort or another vexing questions as to whether

a given device can be classed as a machine or machinery will undoubtedly arise. But the present construction seems to us to furnish a practical working guide.

· We turn now to the application of the principles just discussed to the case at hand. The board made detailed findings of fact with respect to how the various devices in question were operated, and pictures of many of them are before us. The property which the board determined to be "machinery" was the following: 4 dispensers, 2 soda fountains, a toaster, a potato peeler, a dishwashing machine, a slicer, and a mixing machine. The board's findings touching these devices are set forth in the footnote.[1] We agree

---

[1] Dispensers.

"The . . . dispenser rests upon a counter and consists of a metal container in which there is a syrup compartment and a mechanical device by which the flow of syrup is controlled by opening and closing a faucet attached to the container. . . . [The] dispensers are connected to a carbonator located in the basement."

Soda Fountains.

"Each [soda fountain] unit is housed in a porcelain cabinet which rests on the floor. In these soda fountains are located eight syrup containers consisting of jars which hold the syrup. At the top of the jars are devices called 'plungers.' It is necessary to press the plunger downward in order to cause the syrup to flow out through a metal tube connected at the top with the container. The unit also contains storage compartments for ice cream and milk. At the head of the fountain are three faucets. Ordinary water is supplied through one of the faucets and carbonated water is supplied through the remaining two faucets which are connected by pipes to a carbonator. The soda fountains are also connected to a cooling system operated through two refrigerator units. The refrigerator units and the carbonators are located in the basement. The carbonator is a portable, electrically operated machine which rests on a raised platform. A pipe leading from the carbonator is connected to a tube containing carbonic acid. The carbonator mixes the gas with water and also stores it away. When the faucet in the soda fountain located in the store above is opened, the carbonated water is drawn from the storage cabinet or tank. The storage tank is automatically refilled by the carbonator. The two refrigerating units are bolted to a platform and consist of electrically operated compressors. These furnish the cooling system for the soda fountains."

Toaster.

"The toaster is the portable, rotating type. Heat is electrically applied to bread placed on a rotating device operated by an electric motor."

Potato Peeler.

"The potato peeler is of metal and rests of its own weight on the floor of the basement. Whole potatoes are put into a receptacle located at the top of the unit and are peeled by a revolving disc connected to a motor. Water flows into the unit and the potato peelings are washed away leaving the potatoes intact."

Dishwashing Machine.

"The dishwasher is used for washing the dishes used with the food sold in the store. An electric motor operates a pump which propels hot water into the dishwasher. The water is kept hot in a tank heated by gas."

with the conclusions of the board to the effect that this property was "machinery" and hence subject to local taxation.

The property which, according to the board, was not "machinery" was the following: 39 cash registers, a safe, a calculating machine, 2 typewriters, 1 steam table, 1 Silex unit, 1 grill, 1 fudge heater, 1 deep freeze, 1 refrigerator, 7 scales, 1 marking machine, 1 type setting machine, and 8 cooling fans. We have no hesitation in agreeing with the board's conclusion with respect to the safe. It was "of standard type" and was "used for the safekeeping of money and business records." By no reasonable test can this be classed as "machinery."

The remaining property in this group, however, presents questions of more difficulty. We think that the scales, steam table, fudge heater, Silex unit, and grill, descriptions of which appear in the footnote,[1] were also rightly held not

---

Slicer.

"The slicing machine is used in the process of cutting meat and slicing bread and is rotated by an electric motor."

Mixer.

"An electrically operated mixer is used for mashing potatoes, mixing bread dough and other similar operations. It is portable, made of metal and rests on a table."

[1] Scales.

"There are seven small candy scales of the balance type located at the candy counter. A weight is placed on one end of the scale to balance the candy on the other end. Each unit consists of a scoop, stand and weights."

Steam Table.

"The steam table consists of a metal tank, about 5 feet long and 3 feet wide, which is filled with water each day. It is covered with a metal frame, with openings cut into the top, through which containers of food are inserted and partly immersed in the water. The food is kept warm by the water, heated from beneath by a set of gas burners."

Fudge Heater.

"The fudge heater is an electric heater and keeps the fudge warm for use with ice cream purchased at the soda fountain."

Silex Unit.

"The Silex unit consists of four gas burners used for heating water in the process of coffee making. This coffee, when fully prepared, is sold to the . . . [taxpayer's] customers, to be consumed on the premises."

Grill.

"The grill is made of metal. There is a metal plate on the top with two gas burners underneath. This device is used to grill sandwiches and for toasting."

to be "machinery." It is our opinion that the other items, namely, the cash registers, calculating machine, typewriters, marking machine, type setting machine, electric fans, deep freeze unit, and refrigerator, descriptions of which also appear in the footnote,[1] can fairly be said to be machines and hence ought to be classed as "machinery" under the statute.

It follows that the taxpayer is entitled to an abatement but not in the amount granted by the board. Accordingly the decisions of the board are reversed and the cases are remanded to the board so that the abatement can be recomputed in conformity with this decision.

*So ordered.*

---

[1] Cash Registers.

"The . . . cash registers are of the portable type, manually operated by pressing down a lever which in turn opens a cash drawer located in a compartment at the bottom of a cabinet. The amount of each sale is automatically registered in the machine by the use of mechanical devices housed in the cabinet. The proceeds from the sales are kept in these cash registers during business hours."

Calculating Machine.

"The calculating machine is portable, of the standard, office type, and is used as a mechanical bookkeeping device."

Typewriters.

"The typewriters are the ordinary office type used by clerks for letter-writing."

Marking Machine.

"The marking machine is kept in the stockroom and is set on a bench. Strips of tags and pins and a stamping device are placed in the machine. The machine is electrically operated; by one operation, the tags are printed and attached to garments sold by the . . . [taxpayer] in its store. The machine is about 24 inches high, 15 inches wide and 24 inches long."

Type Setting Machine.

"The type setting machine is hand operated. It is about 12 inches square and about 12 inches high. It is used to print tags similar to those printed by the marking machine. These tags are fastened to garments by hand."

Electric Fans.

"The eight electric fans used on the premises are the ordinary cooling fans of the store type attached to the ceiling and used for air cooling."

Deep Freeze and Refrigerator.

"There is an electrically operated deep freeze unit and an electric refrigerator. These are portable, of the common type usually found in the home, and used for the cold storage of food. They operate by plugging an electric cord into an electric outlet."