WARNER AMEX CABLE COMMUNICATIONS INC. *vs.* BOARD OF
ASSESSORS OF EVERETT.

Suffolk.    September 12, 1985. — November 18, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Taxation,* Personal property tax: machinery, poles and wires, valuation;
Cable television system. *Words,* "Machinery," "Stock in trade."

The Appellate Tax Board erred in ruling that cables comprising a taxpayer's
cable television distribution system over public ways were subject to
local taxation. [240-241]

Certain converters placed in the homes of subscribers to a taxpayer's cable
television distribution system were "machinery used in the conduct of
the business" within the meaning of G. L. c. 59, § 5, Sixteenth (2),
and, consequently, were subject to local taxation. [241-243]

Where the depreciation rates applied by the Appellate Tax Board to the
reproduction cost of certain property were those ordinarily used by the
taxpayer both in its corporate balance sheets and in regulatory rate
proceedings, and where the local board of assessors made no effective
challenge to the taxpayer's evidence of depreciation rates, it was held
that the Appellate Tax Board's determination of depreciation rates was
supported by substantial evidence. [243]

APPEAL from a decision of the Appellate Tax Board.

*Walter H. Mayo, III (Gary L. Hoff* with him) for the taxpayer.

*Joseph F. Dalton* for the Board of Assessors of Everett.

*John S. Brown & George P. Mair,* for New England Cable
Television Association, Inc., amicus curiae, submitted a brief.

WILKINS, J. These cross appeals arise out of a decision of
the Appellate Tax Board (board) on appeals to it by Warner
Amex Cable Communications Inc. (Warner) of local tax assess-
ments made by the assessors of Everett for fiscal years 1980
and 1981 on personal property contained in Warner's cable
television system. We agree with Warner, on its appeal from
the board's decision, that its cables over public ways are not
subject to local taxation, but we reject Warner's argument

that converters placed in subscribers' homes are also free from local taxation. We reject the assessors' contentions in their appeal that no substantial evidence supports the board's finding of the rates of depreciation to use in valuing Warner's property according to the "reproduction cost new less depreciation" approach.

1. The board improperly ruled that the cables that comprise Warner's distribution system over public ways were subject to local taxation. The board relied on G. L. c. 59, § 5, Sixteenth (2) (1984 ed.), a clause which, along with others in § 5, states what property is exempt from local taxation.[1] The fact that certain property, such as wires and aerial cables, may not be exempted from local taxation under § 5, Sixteenth (2), does not by itself make that property subject to assessment. Similarly, the provision that "[a]ll property, real and personal, situated within the commonwealth . . . unless expressly exempt" (G. L. c. 59, § 2 [1984 ed.]) is subject to taxation does not make nonexempt property assessable without statutory direction as to whom and by whom it is to be assessed. See *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 446-448 (1957); P. Nichols, Taxation in Massachusetts 228 (3d ed. 1938) ("[N]o property can lawfully be taxed unless the statutes further define the place where and the person to whom it is to be assessed"). The statutory provisions that appear only to define the place of assessment and the person to be assessed do, in fact, determine what property is taxable. *Id.*

The assessors seek to justify their assessment of Warner's distribution system over public ways as "machinery used in the conduct of the business." G. L. c. 59, § 18, Second (1984 ed.).[2] The board rightly rejected this contention, saying that

[1] This clause in relevant part exempts from local taxation all property owned by foreign corporations, as defined in G. L. c. 63, § 30, "other than the following: — real estate, poles, underground conduits, wires and pipes, and machinery used in the conduct of the business, which term, as used in this clause, shall not be deemed to include stock in trade . . . ."

[2] Neither the board nor the assessors in their brief have relied on the introductory language of § 18 or on § 18, First, to justify the city's right to assess Warner's aerial distribution system located over public ways.

"under our tax laws, poles and wires, among others, are distinct subject matters of taxation and are taxed, if at all, as 'poles and wires' and not as 'machinery used in the conduct of the business.'" We reject any suggestion that Warner's entire cable television system is one great machine used in the conduct of its business. The concept of "one great integral machine" was first applied in *Commonwealth* v. *Lowell Gas Light Co.,* 12 Allen 75, 78 (1866), to make the "entire apparatus by which gas is manufactured and distributed" taxable as "machinery employed in any branch of manufactures." Gen. Stats. c. 11, § 12, Second (1860). The concept of one great machine was reluctantly extended to an electric distribution system in *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 565 (1956). We would not extend it beyond the manufacturing context.

Almost forty years ago, in a case involving property of a telephone company, this court considered G. L. c. 59, § 18, Fifth (Ter. Ed.), which provided for local assessments of "[u]nderground conduits, wires and pipes laid in public ways, . . . and poles, underground conduits and pipes, together with the wires thereon or therein, laid in or erected upon private property." We concluded that clause Fifth "makes no provision for the taxation of poles with the wires thereon erected on public ways but taxes only those located on private property." *Assessors of Springfield* v. *Commissioner of Corps. & Taxation,* 321 Mass. 186, 194 (1947). There has been no statutory amendment or addition to alter that conclusion.[3]

2. The board correctly concluded that converters placed in subscribers' homes are "machinery used in the conduct of the business" and are not "stock in trade." Pursuant to G. L. c. 59, § 5, Sixteenth (2), machinery, other than stock in trade, used

---

[3] The board erroneously sought to distinguish the *Springfield* case and to avoid the implications of G. L. c. 59, § 18, Fifth, which, the board acknowledged, made no provision for taxing wires on public ways. The board stated that Warner is a foreign corporation governed by G. L. c. 59, § 5, Sixteenth (2) (which does not exempt poles and wires of a foreign corporation), and that in the *Springfield* case the telephone company was not governed by such a provision. The distinction is unimportant. The telephone company was governed by comparable language in G. L. c. 59, § 5, Sixteenth, as appearing in St. 1941, c. 467.

in the conduct of a business is subject to local taxation. The board found that "the function of the converter is to enable the subscriber to select any one of [thirty-six] cable television channels made available by the appellant's cable TV system."[4]

The word "machinery" in § 5, Sixteenth (2), has not acquired a specialized meaning. *Assessors of Brockton* v. *Brockton Olympia Realty Co.,* 322 Mass. 351, 355 (1948). Any "mechanical device which can fairly be said to be a machine must be treated as 'machinery' under the statute." *Assessors of Haverhill* v. *J.J. Newberry Co.,* 330 Mass. 469, 472 (1953) (cash registers, syrup dispensers, and typewriters [among others] taxable as machines). Accordingly, we have accepted a broad definition of machinery: "any combination of mechanical means designed to work together so as to effect a given end." *Collector of Taxes* v. *Cigarette Serv. Co.,* 325 Mass. 162, 165 (1950), quoting *Assessors of Brockton, supra* at 355 (cigarette vending machines taxable). The board was fully warranted in concluding that converters are "machinery" within the common understanding of the word and that converters are within the general range of items this court has ruled to be machinery.

Warner's converters are not "stock in trade" exempt from local taxation. The words "stock in trade" in § 5, Sixteenth (2), have been given a narrow meaning. *Boston* v. *Mac-Gray Co.,* 371 Mass. 825, 827 (1977). See *Collector of Taxes* v. *Cigarette Serv. Co., supra* at 166. The board found that the converters were not for lease; that Warner's "stock in trade," if it had one, was the sale of the right to select and view cable television programs; and that converters allowed the subscriber to choose any of Warner's programs. The arrangements with subscribers by which converters are placed in homes are made, therefore, solely to create access to the product Warner is selling. See *Boston* v. *Mac-Gray Co., supra* at 828 (coin-oper-

---

[4] The board further found: "It is connected to the appellant's cable television system by means of a drop cable and attached to the subscriber's television set. The television set is tuned to Channel 3 and remains on that channel; and by means of a switch and a row of buttons on the converter the subscriber may select the cable television channel of his choice."

ated washing machines and dryers taxable); *Collector of Taxes* v. *Cigarette Serv. Co., supra* at 166. See also *Ultronic Syss. Corp.* v. *Assessors of Boston,* 355 Mass. 284, 288 (1969) (machinery principally involved in processing information, the taxpayer's stock in trade, not exempt).

3. In their appeal, the assessors' sole challenge to the board's determination of the value of Warner's taxable personal property asserts the absence of reliable evidence of depreciation rates to apply to the reproduction cost of that property.[5] This argument must fail because the board found, on ample evidence, that the depreciation rates employed were those Warner ordinarily used both in its corporate balance sheets and in regulatory rate proceedings. Particularly because the assessors made no effective challenge to Warner's evidence of depreciation rates, either by cross-examination or by direct evidence, the record unquestionably has substantial evidence to support the board's determination of those rates. See *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981).

4. These proceedings are remanded to the board for a determination in light of this opinion of the fair cash value of Warner's personal property subject to local taxation. Such a determination could be made by eliminating the value of wires and cables over public ways from the values previously determined.

*So ordered.*

---

[5] The assessors' challenge to Warner's statistical estimate of the amount of cable over public ways leading from poles to residences (so-called "drop cable") is premature. Because it upheld the taxation of all wires and cables the board did not reach the question, as it now must, of what portion of Warner's cables is over public ways and what portion is not.