The trial court found that cable television "converters" are not subject to state rental tax, and that the taxpayer was therefore due a refund for the tax paid on those items. The Alabama Department of Revenue (Department) appeals.
On May 22, 1985, Storer Cable Communications, Inc. (Storer), filed a petition for refund with the Department for rental taxes paid in response to an audit conducted in 1985 for the period March 1, 1981, through December 31, 1984. Following the Department's denial of the petition, Storer filed for a writ of mandamus in the circuit court, alleging that the rental tax assessment was in error and requesting the court to compel the Department to pay a refund of the rental taxes.
After an ore tenus hearing, the court held the following:
 "After thoroughly reviewing the entire record in this case, this Court is of the opinion, and finds as a fact, that Storer does not lease or rent converters, nor is Storer engaging in or continuing in the business of leasing or renting converters. This Court finds as a fact that the fees upon which the Department assessed and collected rental taxes are not rental fees, rather the fees are service charges for cable programming, and such fees are not subject to rental tax."
The court, therefore, granted Storer's petition for a writ of mandamus and ordered the Department to refund the rental taxes paid on the converters. This appeal followed.
The single issue to be decided is whether the cable television converters in question *Page 965 
are subject to rental tax pursuant to § 40-12-222, Code of Alabama 1975.
Section 40-12-222 provides in pertinent part the following:
 "In addition to all other taxes now imposed by law, there is hereby levied and shall be collected as herein provided a privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting tangible personal property at the rate of four percent of the gross proceeds derived by the lessor from the lease or rental of tangible personal property."
A lease or rental for rental tax purposes is defined in §40-12-220(5) as the following:
 "A transaction whereunder the person who owns or controls the possession of tangible personal property permits another person to have the possession or use thereof for a consideration and for the duration of a definite or indefinite period of time without transfer of the title to such property."
The Department contends that the converters are rented by Storer and are properly subject to the rental tax. The Department focuses on a $3.50 monthly charge which it contends is a rental fee for the use of the converter. Storer contends that the fee is a service charge for certain cable programming and argues that the converter's only function is to give a customer access to that programming. Storer, therefore, contends that it is in the business of providing cable television service, and any converters supplied in the delivering of that service have no purpose other than to enable a customer to receive that service and are, therefore, not subject to the rental tax.
A review of the record reveals the following: Storer is in the business of providing cable television service to its subscribers in a number of states, including Alabama. For our purposes, the service is provided by means of a coaxial cable that runs from a public utility pole into the subscriber's residence. The cable is connected either to a television or to a converter box which is then connected to the television. The converter is necessary for subscribers with conventional television sets to receive certain programming offered by Storer. Subscribers with what are known as "cable-ready" television sets do not need a converter to receive that programming.
At the time of the hearing, Storer provided three types of cable service: Basic, Tier, and Premium. Basic was purchased by all Storer subscribers. Storer itself acquired all but two of the Basic programs without charge. The price charged its subscribers was subject to government regulation during the period of the Department's audit. Storer's Premium service made available such channels as "HBO," " Showtime," and the like.
The factual issue in this case concerns the Tier service, which made available additional programming to that offered through the Basic service. Unlike the Basic service, every program offered through the Tier service had to be purchased by Storer and represented a total cost of approximately $1.00. For those subscribers with conventional televisions, a converter was necessary to receive this Tier service.
Prior to 1981, Storer provided only the Basic service. When additional programming was made available at that time, the record shows that converters were primarily available only through Storer. The record shows that it became apparent to Storer by 1983 that a number of subscribers were gaining access to additional programming while paying for only Basic service. The source of the problem was the proliferation of cable-ready televisions and converters on the market at that time. A number of options were discussed to remedy the problem, but all were dismissed as having substantial adverse consequences. The solution to the problem was provided by Congress in 1984. Legislation was passed at that time to deregulate cable television rates, effective January 1, 1987. Storer's plan was to combine the Basic and Tier service and charge a single fee for them. Thus, all subscribers would be charged for the additional programming, whether they needed a converter or not.
The record shows that in 1981 the $3.50 charge was designated to be for "Tier Service." *Page 966 
A handwritten notation on a pricing sheet read as follows:
 "Why not change this wording to 'converter lease' rather than 'Tier Service?' Mason says these other signals go out unscrambled and the word just sounds better."
The memorandum was from a regional supervisor/vice-president of Storer to an Alabama area manager. Subsequently, Storer advertising designated the $3.50 charge to be for "converter rental." Storer's Alabama operations manager testified with respect to his disagreement about the change in designation and the action taken.
 "When I arrived on the scene in Montgomery in January of 1984 and saw exactly what the State found, is that we were calling that a rental fee, converter rental if you will, I immediately set out to change that terminology because I could see where it was misleading to the customer because they were not renting that box. We were providing them a service, they were paying for that service and we wanted them to see that. So the first step that I took was to have all of the rate cards in the State of Alabama changed — this was in early '84 — so that our rate cards then said that . . . called that [service] Cable Plus. It's on the rate cards today."
He also testified as follows:
 "[I]f we referred to this as a box rental then the customer would simply bring his box in as he purchased a cable ready set and say I don't want to pay that fee any longer, and that's not what . . . that's not the case at all. We still want to charge that fee. We have to charge that fee to cover the cost of providing that additional service and obviously to make a little profit for the company. So I could foresee a problem with cable ready sets with the purchase of converters in charging that fee, especially if we ourselves called it a lease or a rental fee."
Thus, Storer maintains that despite the designation of "converter rental" on its price list, the $3.50 was in fact a service charge for the additional programming. It points to its cost in acquiring the additional programming and to the fact that the purchase price of the converters varied widely (from $40 to $105) while the "converter rental" charge remained the same, as support for its contention. Storer, therefore, argues that the $3.50 represents a service charge in relation to the cost of the additional programming, rather than a rental fee in relation to the cost of the converters.
The Department argues that the $3.50 is consideration paid for the use of the converter; that the subscriber has possession of the converter; that title to the converter remains in Storer; and that the transaction, therefore, fits squarely within the § 40-12-220 definition of a lease or rental. The Department concludes that the converters are subject to rental tax pursuant to § 40-12-222.
This is a case of first impression in Alabama. The Alabama case which bears most directly on the issue is State v. SteelCity Crane Rental, Inc., 345 So.2d 1371 (Ala.Civ.App. 1977). In that case we held that the principal characteristic of a rental or lease, for purposes of the rental tax, is the giving up of possession to the lessee so that he, as opposed to the lessor, exercises control over and uses the rented property. We therefore held that the furnishing of cranes with operators was not a lease, since the requisite giving up of possession never occurred; the crane was always controlled by the operator, an employee of the crane owner. It was undisputed in that case that cranes furnished without operators were subject to the rental tax.
In that case, the State also contended that the cranes were brought within the ambit of the statute by the word "use" in the statute. We analyzed the State's argument in this way:
 "Here, the State contends, a lease or rental is statutorily defined as a transaction not only where the owner allows another to have 'possession' of tangible personal property, but also where the owner permits another the 'use' of tangible personal property for consideration. In other words, since the statute declares that a lease or rental is a transaction whereby the owner permits another to *Page 967 
have 'possession or use' of the property, either one — 'possession or use' — is sufficient to bring the transaction within the statute. Both possession and use are not required. The term 'use' is a broader term than possession and, in this instance, the State concludes the lease tax was properly applied. This contention is without merit.
 "A statute is to be construed so as to effectuate the intent of the legislature. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In ascertaining the legislative intent, courts may construe the disjunctive conjunction 'or' and the conjunctive conjunction 'and' interchangeably. In re Opinion of the Justices, 252 Ala. 194, 41 So.2d 559 (1949). . . . [T]he legislature did not seek to expand the meaning of lease or rental beyond that normally ascribed to such terms."
Steel City, supra, at 1374. We therefore rejected the State's argument and held that the transaction was not a lease.
In this case, the Department reverses the argument, contending that the converters are in the "possession" of Storer's subscribers and are subject to the rental tax. The question remains whether Storer's subscribers have the "use" of the converters.
"Use" is defined as follows:
 "The purpose served; a purpose, object or end for useful or advantageous nature. To put or bring into action or service; to employ for or apply to a given purpose. To avail oneself of; to employ; to utilize; to carry out a purpose or action by means of; to put into action or service, especially to attain an end." (Citations omitted.)
Black's Law Dictionary 1382 (5th ed. 1979). Thus, followingSteel City, supra, we could hold that the converters are in the "possession" of Storer's subscribers, but are still not subject to rental tax if the subscribers do not have the "use" of them. As the following analysis will show, it is to what use the property in question is put (or can be put) that often determines whether the rental tax statute applies in cases like the instant one. This question of the property's "use" is connected to the overall purpose of the contract in question.
Storer contends that the real focus of cases such as the one at bar is the "essence of the arrangement in question."Steel City, supra, at 1374. In Steel City, we held that the arrangement in question was not that of a lease. We stated:
 "Rather, it is an agreement whereby one party has agreed to perform a particular task or tasks for another. It is a contract under which the taxpayers are obligated to perform services for a certain number of hours or until the completion of a given job. . . . The substance of taxpayers' contracts with the contractor/lessee are agreements to provide services for the contractor. Hence, in this instance, this court cannot accept the State's contention that such transactions are subject to the lease tax. . . ." (Emphasis ours.)
Steel City, supra, at 1374.
Other states have also looked to the purpose of the transaction in question as the basis for distinguishing between rental (or sale) and service contracts. In Culligan WaterConditioning, Inc. v. State Board of Equalization, 17 Cal.3d 86,130 Cal.Rptr. 321, 550 P.2d 593, 598-99 (1976), the court cited the Cal.Admin. Code tit. 18, § 1501, as follows:
 "The basic distinction in determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service is one of the true objects of the contract; that is, is the real object sought by the buyer the service per se or the property produced by the service. . . ."
The court in that case held that the real object of the contract was to provide a water softening unit, not a service; once the unit was installed, nothing more was required of the taxpayer in order for the taxpayer to get softened water. In the case at bar, the converter was useful only as a component of Storer's cable service. The State does not attempt to levy a tax on other components of the service, such as *Page 968 
the coaxial cable itself. In American Video Corporation v.Lewis, 389 So.2d 1059, 1061 (Fla.Dist.Ct.App. 1980), the court stated the following:
 "In our resolution of the controversy we are primarily influenced by the simple fact that these hooks, ferrules, wires and gadgets are unused, unusable and of no value in and of themselves to the customer, so as to support payment of a separate consideration for their possession, until such time as appellant makes the proper connections to its system so that the customer can watch cable T.V."
Finally, in Warner Amex Cable Communications, Inc. v. Boardof Assessors of Everett, 396 Mass. 239, 485 N.E.2d 177, 179
(1985), converters were held subject to local taxation as "machinery used in the conduct of the business." The issue was not whether the converters were leased, but the court did state the following:
 "The board found that the converters were not for lease; that Warner's 'stock in trade,' if it had one, was the sale of the right to select and view cable television programs; and that converters allowed the subscriber to choose any of Warner's programs. The arrangements with subscribers by which converters are placed in homes are made, therefore, solely to create access to the product Warner is selling."
Warner, supra, 485 N.E.2d at 180. In other words, the taxing authority held that converters were not leased, even while assessing a tax on them under a different statute.
The Department argues that the differing ways in which a state levies its taxes makes cases like Warner unpersuasive, as applied to the case at bar. Thus, it argues that NashvilleMobilphone Company v. Woods, 655 S.W.2d 934 (Tenn. 1983), which held that the taxpayer was not in the business of leasing pagers, but in the business of selling communication services, is unpersuasive on the grounds that Tennessee's tax statutes are different from Alabama's. We are not persuaded by this argument. We think the issue to be one of determining the purpose of the transaction and what role the property in question plays in that transaction. We are concerned in this case with determining whether Storer's converters or its cable television service is the substance of the transaction. We do not think this basic concept is affected by statutory considerations of the sort proposed by the Department: the imposition of the rental tax must be based on Alabama statutes, not those of another state. One writer summarizes how such cases are to be analyzed:
 "If the article sold has no value to the purchaser except as a result of services rendered by the vendor, and the transfer of the article to the purchaser is an actual and necessary part of the services rendered, then the vendor is engaged in the business of rendering service, and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail. . . ."
Ball, 9 Vand.L.Rev. at 235, 236 (1956) (quoting Snite v.Department of Revenue, 398 Ill. 41, 74 N.E.2d 877, 879-80
(1947)).
Where testimony is taken ore tenus, the findings of fact made and entered by the trial court will be sustained unless they are clearly and palpably wrong or without supporting evidence, or are manifestly unjust. Sterling Oil of Oklahoma v. Pack,291 Ala. 727, 287 So.2d 847 (1973). Tax laws are to be strictly construed against the taxing power and in favor of the taxpayer. State v. Kershaw Manufacturing Company,372 So.2d 1325 (Ala.Civ.App. 1979). The trial court held that Storer did not lease converters, nor was it in the business of leasing converters, and that the converters were therefore not subject to rental tax. We concur in that judgment. The converters had no function apart from giving Storer subscribers access to the cable service. That is, they were "useless" in and of themselves. The substance of the transaction was cable service; the converters were merely a means serving that end. *Page 969 
We therefore affirm the trial court's order that the Department refund those taxes improperly assessed on the cable television converters.
AFFIRMED.
BRADLEY, P.J., and HOLMES, J., concur.