# VERIZON NEW ENGLAND INC. *VS.* BOARD OF ASSESSORS OF BOSTON & others.[1]

No. 09-P-2342.

Suffolk. November 9, 2010. - March 19, 2012.

Present: McHUGH, SIKORA, & FECTEAU, JJ.[2]

*Telecommunications. Telephone Company. Public Utilities,* Telecommunications, Value. *Taxation,* Assessors, Corporation, Value, Personal property tax: public utility, value. *Value. Real Property,* Poles and wires, Tax.

The Appellate Tax Board (board) erred in concluding that poles and wires erected on public ways by a corporation that provides telephone, telegraph, and other telecommunications services were subject to taxation by the cities of Boston and Newton pursuant to G. L. c. 59, § 18, First, where case law has uniformly construed the reach of the statute to exclude taxation of poles and wires erected by corporations, the Legislature has used care and precision in other sections of statutes dealing with the taxation of wires and poles, and changes in the approach to taxation of corporate shareholders did not justify alteration of an established statutory construction [447-455]; for the same reasons, the board erred in concluding that the corporation's construction work in progress (CWIP) was taxable pursuant to G. L. c. 59, § 18, First [455]; however, to the extent that the CWIP consisted of underground conduits, wires, and pipes laid in public ways, and poles, underground conduits, and pipes, together with the wires thereon or therein, laid in or erected upon private property, the board properly concluded that the CWIP was taxable for the years in question pursuant to G. L. c. 59, § 18, Fifth [455-456].

APPEAL from a decision of the Appellate Tax Board.

*William A. Hazel* for the taxpayer.

---

[1]Board of assessors of Newton and the Commissioner of Revenue (commissioner). Before the Appellate Tax Board (board), the commissioner argued that neither "aerial plant" (i.e., poles and wires) over public ways nor construction work in progress (CWIP) was taxable. Here, however, the commissioner does not join Verizon New England Inc. (Verizon) in its appeal on that issue. Instead, the commissioner argues only that a procedural issue Verizon raises on appeal is now moot. We discuss that issue in note 5, *infra.*

[2]Justice McHugh participated in the deliberation on this case and authored the opinion prior to his retirement.

*Anthony M. Ambriano* for board of assessors of Boston & another.

*Martha Coakley*, Attorney General, *Daniel J. Hammond*, Assistant Attorney General, & *Daniel A. Shapiro*, for Commissioner of Revenue, submitted a brief.

McHUGH, J. Verizon New England Inc. (Verizon) appeals from a decision of the Appellate Tax Board (board) concluding that poles and wires (which the parties refer to as "aerial plant") erected on public ways, as well as construction work in progress (CWIP), are subject to taxation by the cities of Boston and Newton for fiscal year (FY) 2003 through FY 2009. For the reasons that follow, we vacate the board's order.

*Background.* The record, significant portions of which are based on an agreed statement of facts and allied exhibits, reveals that Verizon is a New York corporation. Verizon has been authorized to do business in the Commonwealth since 1884, initially as the New England Telephone & Telegraph Company and later under its current name. Verizon provides telephone, telegraph, and other telecommunications services throughout the Commonwealth and owns, wholly or in combination with others, poles, wires, conduits, machinery, and other equipment in many, if not all, of the Commonwealth's cities and towns.

The Newton and Boston boards of assessors (collectively, assessors), like their counterparts across the Commonwealth, are charged with assessing personal property for purposes of local taxation. To ensure uniformity in valuation of similar property that telephone and telegraph companies own in many different cities and towns, G. L. c. 59, § 39, as appearing in St. 1955, c. 344, § 1, requires the Commissioner of Revenue (commissioner) to determine annually the "valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies shall be assessed."

To facilitate compliance with § 39, telephone and telegraph companies annually provide the commissioner with a list, on a form the commissioner issues in accordance with G. L. c. 59, § 41, stating the original cost of the personal property the commissioner indicates is subject to central valuation.[3] The commis-

---

[3]The form is designated "State Tax Form 5941." See *Matter of the Valuation of MCI WorldCom Network Servs., Inc.*, 454 Mass. 635, 637 n.4 (2009).

sioner then values the property described on the forms and, by May 15 of each year, certifies those values to the assessors of cities and towns where the property is located. G. L. c. 59, § 39. Subject to any changes that occur as the result of appeals, the values so certified are the values the assessors must use to assess and tax the property for the fiscal year beginning the following July.

The commissioner's form contains instructions that, among other things, describe the property the companies must list. For the years in question, the forms stated that "corporations . . . will be valued only on poles and wires over private property, underground conduits, wires and pipes in public or private property, and machinery used [for particular purposes] . . . . G. L. c. 59, § 39; G. L. c. 59, § 5, cl. 16(1); G. L. c. 59, § 18(5)."[4] Accordingly, when Verizon filed the required forms, it did not list the cost of its aerial plant over public ways or its CWIP.

Newton filed a timely appeal from the values the commissioner had assigned for FY 2003 through FY 2008, and Boston and Verizon filed appeals from the values the commissioner had assigned for FY 2005 through FY 2009. Among the questions raised in all of the appeals was whether aerial plant over public ways and CWIP were taxable.

The board bifurcated the appeals. Phase one dealt with several issues other than valuation, including whether aerial plant over public ways was taxable. Phase two focused on valuation and other discrete issues, including whether CWIP was taxable. After hearings, the board issued its phase one order on March 3, 2008, ruling that aerial plant over public ways was taxable.[5] On August 4, 2009, the board issued a decision that CWIP was

---

[4]The forms for FY 2004 through FY 2008, with inconsequential differences as to punctuation and capitalization, contained the quoted language. Although the text in the FY 2003 form differed from that in the other forms, the meaning did not. The FY 2003 form stated: "companies are taxable on poles, wires, underground conduits, wires and pipes . . . *excluding poles and wires over public ways*" (emphasis in original).

[5]Verizon moved for an interlocutory report to this court of the phase one order. The board denied the motion on grounds that it had no power to make such a report, rejecting in the process Verizon's suggestion that the power to do so existed by analogy to G. L. c. 214, § 30. That statute authorized Superior Court judges to report interlocutory rulings under circumstances now embodied

taxable.[6] On October 1, 2009, the board issued its findings of fact and report on both phases. This appeal followed in timely fashion.

*Discussion.* a. *Aerial plant over public ways.* The board based its conclusion that aerial plant over public ways is taxable primarily on G. L. c. 59, § 18, First. Chapter 59, § 18, is one of three sections of the General Laws that together provide the broad framework for taxing real and personal property within the Commonwealth.[7] The First clause, as amended through St. 1978, c. 581, § 4, reads as follows:

"First, All tangible personal property, including that of

in Mass.R.Civ.P. 64, as amended, 423 Mass. 1410 (1996). But § 30 was repealed in 1973, see St. 1973, c. 1114, § 62, and in any event, the board stated that it would not have exercised its discretion to make a report even if it had the power to do so. Under those circumstances, and even if Verizon's discussion of the point amounts to an appellate argument, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we decline to consider the question of power Verizon has raised.

[6]In March, 2008, a week after issuing the phase one ruling in this case, the board decided a case called *In re: MCI Consolidated Central Valuation Appeals: Boston & Newton*, 34 Mass. App. Tax Bd. Rep. 128, 155 (2008) (*MCI*), in which it held for the first time that CWIP was taxable. That ruling did not play a role in the subsequent appeal from the board's decision, and the Supreme Judicial Court's opinion makes no mention of it. See *Matter of the Valuation of MCI WorldCom Network Servs., Inc.*, 454 Mass. 635 (2009). The industry and all parties to this appeal knew that the *MCI* appeal was pending before the board and treated it as a test case. Accordingly, many valuation appeals relating to the property of more than a dozen telephone and telegraph companies were filed at the board while that appeal was in progress. On May 30, 2007, the board issued orders consolidating and bifurcating for trial all of what were by then 970 appeals filed by Verizon, the Boston assessors, the Newton assessors, and the boards of assessors of various other municipalities, for FY 2003 through FY 2007. Thereafter, only the Boston and Newton assessors took an active role in the proceedings and the board's final valuation order pertained to Verizon's property only in those two cities.

[7]The board also relied on the other sections that form the framework. The first of those is G. L. c. 59, § 2, a broad taxing provision stating in material part that "[a]ll property, real and personal, situated within the commonwealth, and all personal property of the inhabitants of the commonwealth wherever situated, unless expressly exempt, shall be subject to taxation . . . ." The other section, G. L. c. 59, § 5, deals with exemptions from taxation. Section 5, Sixteenth (1), contains what is known as the corporate utility exemption, which excludes from taxation all property owned by, among others, a utility corporation except for "real estate, poles, underground conduits, wires and pipes, and machinery used in manufacture or in supplying or distributing

persons not inhabitants of the commonwealth . . . shall, unless exempted by [G. L. c. 59] section five, be taxed to the owner in the town where it is situated on January first."[8]

In the board's view, then, the broad language of § 18, First, created a general rule that all tangible personal property, including Verizon's poles and wires on public ways, is subject to property taxation. Verizon's argument to the contrary proceeds as follows. In a number of cases decided long ago, the Supreme Judicial Court held that personal property owned by corporations is not taxable without explicit statutory authorization. Chapter 59, § 18, First, is not an explicit statutory authorization because it does not mention corporate property. Only two other clauses in § 18 explicitly mention corporate property, and neither authorized taxation of aerial plant over public ways during a fiscal year at issue in these proceedings.[9]

---

water." For the reasons set out in *Warner Amex Cable Communications Inc.* v. *Assessors of Everett*, 396 Mass. 239, 240 (1985), however, unless Verizon is within the class of taxpayers embraced by § 18, First, the sections just described by themselves create no power to tax.

[8]The First clause is preceded by a general provision stating that "[a]ll taxable personal estate within or without the Commonwealth shall be assessed to the owner in the town where he is an inhabitant on January first, except as provided in . . . the following clauses of this section." This general provision, on which no party relies, is of ancient vintage and represents the view that "movables follow the person" or mobilia sequuntur personam. See generally Nichols, Taxation in Massachusetts 276-280 (3d ed. 1938); *Bellows Falls Power Co.* v. *Commonwealth*, 222 Mass. 51, 60-62 (1915). The First clause represents a transition to the more modern view that, in general, personal property is to be taxed where it is located. Nichols, *supra* at 278. Other clauses in § 18 have completely supplanted the general provision and it no longer has any independent force and effect.

[9]The first of the two is G. L. c. 59, § 18, Second, which currently provides:

> "[m]achinery employed in any branch of manufacture or in supplying or distributing water, including machines used or operated under a stipulation providing for the payment of a royalty or compensation in the nature of a royalty for the privilege of using or operating the same, and all tangible personal property within the commonwealth leased for profit, or, in the case of business corporations subject to tax under section 39 of chapter 63, machinery used in the conduct of the business, shall be assessed where such machinery or tangible personal property is situated to the owner or any person having possession of the same on January first."

The second is G. L. c. 59, § 18, Fifth, which currently provides:

Urging that the board's approach is correct, the assessors argue that, although Verizon's reading of the statutes and the cases is essentially accurate, the rationale on which the cases rested has been undercut by an evolution in the Commonwealth's approach to corporate taxation. That evolution, in the assessors' view, effectively broadened the reach of G. L. c. 59, § 18, First, and justifies the result the board reached here. Principally for three reasons, we do not agree.

First of all, G. L. c. 59, § 18, First, has been in existence in one form or another for more than 150 years, and the Supreme Judicial Court has uniformly construed the word "owner" as appearing in that clause to exclude corporations. See *Boston & Sandwich Glass Co.* v. *Boston*, 4 Met. 181, 183-186 (1842) (construing Rev. Stats. 1836, c. 7, and subsequent amendment, St. 1839, c. 139, § 1); *Middlesex R.R.* v. *Charlestown*, 8 Allen 330, 333 (1864) (construing Gen. Stats. 1860, c. 11, § 12, First). As the court observed in *Worcester* v. *Board of Appeal in Tax Matters*, 184 Mass. 460, 464 (1904):

> "In a word, the general provisions of law for taxation of personal property were not applicable to corporations. Except as to machinery, which is specially mentioned [in what is now § 18, Second], the personal property was reached through the shareholders. . . . And this interpreta-

---

"[u]nderground conduits, wires and pipes laid in public ways, except such as are owned by a street railway company, and poles, underground conduits and pipes, together with the wires thereon or therein, laid in or erected upon private property or in a railroad location by any corporation, except poles, underground conduits, wires and pipes of a railroad corporation laid in or erected upon the location of such railroad, and except poles, underground conduits, wires and pipes laid in or erected upon any right of way owned by a street railway company, shall be assessed to the owners thereof in the towns where laid or erected. *Poles, underground conduits, wires and pipes of telecommunications companies laid in or erected upon public or private ways and property shall be assessed to their owners in the cities or towns where they are laid or erected. For purposes of this clause, telecommunications companies shall include cable television, internet service, telephone service, data service and any other telecommunications service providers.*"

The italicized language, which is discussed later in this opinion, was added by St. 2009, c. 27, § 25, and was made effective as of January 1, 2009, to "apply to property taxes assessed for fiscal years beginning on or after July 1, 2009." St. 2009, c. 27, § 149.

tion [of the taxing statutes] . . . was adopted . . . plainly and simply upon the ground that the opposite interpretation would result in a form of double taxation."

To be sure, when those cases were decided, the predecessor to the current § 18, First, was narrower and imposed a tax only on "goods, wares, merchandise, and other stock in trade . . . including stock employed in the business of manufacturing or of the mechanic arts," as the provision appeared in Gen. Stats. 1860, c. 11, § 12, First, or "goods . . . or other stock in trade, *including stock employed in manufactories,*" as the language appeared in the statute the court discussed in *Amesbury Woollen & Cotton Mfg. Co.* v. *Amesbury,* 17 Mass. 461, 462 (1821). But the focus of those cases was on the scope of the word "owner," a word, the cases held, that did not include corporations. By 1918, when the Legislature broadened § 18, First, to reach "all tangible personal property," as it does today, see St. 1918, c. 129, § 1,[10] that construction of "owner" had been in place for nearly one hundred years. Neither the 1918 legislation nor anything the Legislature has done since changed, qualified, or expanded that term. See *Boston* v. *Mac-Gray Co.,* 371 Mass. 825, 828 (1977) ("In matters of taxation [the court] should follow the pattern of [its] decisions, leaving to the Legislature the opportunity to make responsive adjustments in the scope of the tax statutes").

That the word "owner" remains unchanged and unqualified cannot be attributed to legislative oversight. In 1937, a special legislative commission composed of a Senator, several Representatives, and several individuals appointed by the Governor was charged with analyzing the Massachusetts tax system and recommending changes. In its report, the commission stated that "[s]ince [1813,] real estate of a corporation and its machinery (from 1832 to 1936) has [*sic*] been subject to local taxation, but all other forms of personal property belonging

---

[10]The 1918 amendment "mark[ed] the final step in the change of the principle of situs in taxing tangible personal property from the old rule of mobilia sequuntur personam by which the situs of all personal property was deemed to be at the domicile of the owner to the present practice of basing situs almost wholly on the physical location of the property." Nichols, Taxation in Massachusetts 278 (3d ed. 1938).

to corporations have been wholly free from direct taxation."
1938 House Doc. No. 1703, at 45 (Report of the Special Com-
mission on Taxation and Public Expenditures: Part III, The Tax
Structure). Thirty-two years later, another special commission,
similarly composed, said essentially the same thing. See 1971
Senate Doc. No. 1281, at 73-74 (Second Report of the Special
Commission to Develop a Master Tax Plan Relative to the Mas-
sachusetts Revenue Structure). The Legislature made no change
to c. 59, § 18, First, in response to either report.

The second reason for our conclusion that the general terms
of § 18, First, do not reach aerial plant on public ways rests on
the care and precision the Legislature has used in other sections
dealing with taxation of wires and poles. The Legislature first
addressed the subject in 1902 when it enacted G. L. c. 18, Tenth,
which read in material part as follows:

> "Underground conduits, wires and pipes laid in public
> streets by any corporation . . . shall be assessed to the
> owners thereof in the cities and towns in which they are
> laid."

St. 1902, c. 342, § 1. Seven years later, it added the power to
tax aerial plant erected on *private* property, revising the section
so that it read:

> "Underground conduits, wires and pipes laid in public
> streets, and poles, underground conduits and pipes, together
> with the wires thereon or therein, laid in or erected upon
> private property . . . by any corporation . . . shall be as-
> sessed to the owners thereof in the cities or towns in which
> they are laid or erected."

St. 1909, c. 439, § 1. See *Assessors of Springfield* v. *Commis-
sioner of Corps. & Taxn.*, 321 Mass. 186, 194 (1947) ("It is to
be noted that the statute makes no provision for the taxation of
poles with the wires thereon erected on public ways but taxes
only those located on private property"). That is essentially the
way the material portion of the statute read from 1909 to 2009
when the Legislature changed the language to reach aerial plant
on public as well as private property. See St. 2009, c. 27, § 25,
and note 9, *supra*. Where the Legislature has devoted explicit

and careful attention to imposition of taxes in one statutory section, we are loath to assume that it has covered the same subject elsewhere by implication. In fact, to do so would run counter to the settled principle that the "right to tax must be found within the letter of the law and is not to be extended by implication. It is a well-established principle that tax laws are to be strictly construed, and ambiguities in tax statutes are to be resolved in favor of the taxpayer." *Commissioner of Rev.* v. *Molesworth*, 408 Mass. 580, 581 (1990) (citation omitted).[11]

Third and finally, we have grave doubts about judicial power to alter an established construction of a statute under circumstances like those this case presents and about the wisdom of doing so even if the power exists. In so saying, we acknowledge that judicial decisions excluding corporations from G. L. c. 59, § 18, First, originated in a desire to avoid double taxation. At the time the current statute's predecessors were enacted, shareholders were taxed on the value of corporate shares they owned. Those taxes were assessed in the town where the shareholder lived and, the theory was, double taxation would result if the corporation were also taxed on its personal property in the town where the property was located. See, e.g., *Salem Iron Factory Co.* v. *Danvers*, 10 Mass. 514, 516-518 (1813).

Shareholders are no longer taxed on the value of their shares, see G. L. c. 59, § 5, Twenty-fourth, so the precise basis for excluding corporate property from § 18, First, has disappeared. That change in circumstances, however, does not necessarily empower a court or agency to revisit a statutory construction that has been in existence for 150 years. Construction of a statute

---

[11]The assessors' suggestion that the 2009 amendment to § 18, Fifth, amounted to a legislative affirmation of the board's March, 2008, decision finds no support in the record or in any legislative history the assessors have cited. Moreover, the suggestion runs afoul of the proposition that all statutes affecting substantive rights are prospective in operation unless an intention for retroactivity appears by unequivocal language or necessary implication. *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). See, e.g., *Paraboschi* v. *Shaw*, 258 Mass. 531, 533 (1927); *Old Colony Trust Co.* v. *Commissioner of Corps. & Taxn.*, 343 Mass. 613, 619-620 (1962); *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626 (1974); *Sentry Fed. Sav. Bank* v. *Co-operative Cent. Bank*, 406 Mass. 412, 414 (1990). No unequivocal language appears. On the contrary, the amending statute expressly stated that the amendment was only to apply prospectively. See St. 2009, c. 27, § 149.

is an exercise in determining legislative intent, not an exercise in freelance rule making. See *Carpenter's Case*, 456 Mass. 436, 446 (2010), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975) (a "statute must be interpreted according to the intent of the Legislature"). If a court misjudges the underlying intent, the Legislature can change the statute to clarify its intention, see *Nei* v. *Burley*, 388 Mass. 307, 315 (1983) (if the court's construction of a statute "does not reflect the mind of the Legislature, it is free to change the law"), and on occasion, it has done so. See, e.g., *Swift* v. *AutoZone, Inc.*, 441 Mass. 443, 449-450 (2004) ("Lest there be any doubt as to legislative intent in 1960, the 2003 amendment to *permit* crediting was swift legislative action in the wake of the Superior Court judge's ruling to the contrary in this case. That action is strongly suggestive of the Legislature's intent in 1960" [footnote omitted]). But a court's power to decide that changed conditions require a new construction of a statute it construed long ago is, at best, quite limited.[12] The only basis for doing so would be to make the statute consistent with the court's view of what the Legislature would do were it to look anew at the subject of the legislation. To do that, however, is to legislate, not to construe, and the power to legislate lies exclusively in the Legislature's domain. See, e.g., *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980) ("[W]hen the statute appears not to provide for an eventuality, there is no justification for judicial legislation"); *Massachusetts Bay Transp. Authy.* v. *Massachusetts Bay Transp. Authy. Retirement Bd.*, 397 Mass. 734, 740 (1986); *Leopoldstadt, Inc.* v. *Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 92 (2002); *Commonwealth* v. *Gillis*, 448 Mass. 354, 364 (2007).

The principles just described have a special grip here because, as the legislative approach to corporate taxation has evolved over the years, the Legislature itself has explicitly dealt with the issue of double taxation. When it first permitted cities and towns to tax corporate machinery, the Legislature was careful to require deduction of the value of the taxed machinery from the value of the shares taxable to the shareholders. See St. 1832,

---

[12]The limitation is particularly powerful where, as here, the construction in question is that of the Supreme Judicial Court. See generally *Commonwealth* v. *Dube*, 59 Mass. App. Ct. 476, 485-486 (2003).

c. 158, § 2. See also Rev. Stats. 1836, c. 7, § 10, Second.[13] In 1864, the Legislature moved from a local tax on corporate shares paid by shareholders to an excise tax on the market value of all shares paid by the corporation, collected centrally and distributed to cities and towns. In making that change, the Legislature was careful to exclude real estate and machinery taxed locally from the value on which the excise was levied. See St. 1864, c. 208, §§ 5, 8, 15. After it authorized local taxation of certain pipes, conduits, and wires, the Legislature added those items to the list of exclusions from the value subject to the excise. See St. 1909, c. 490, § 41, Third. It did so again in 1919 when it revised the corporate taxation scheme to include a tax on corporate income. See St. 1919, c. 355, §§ 1(3)(a), 2(1), 15(1). The same legislative focus on the interplay between the subjects of local taxation and the value on which an excise is levied is evident in the statutes governing corporate taxation today. See G. L. c. 62C, § 12; G. L. c. 63, § 55. Under those circumstances, there is simply no basis for judicial or agency refinement of the Legislature's handiwork. See generally, e.g., *Molesworth*, 408 Mass. at 581 ("The right to tax must be found within the letter of the law and is not to be extended by implication").[14]

Nothing the Supreme Judicial Court said in *RCN-BecoCom, LLC* v. *Commissioner of Rev.*, 443 Mass. 198 (2005) (*RCN*), on

---

[13]The statute excluded the value of the real estate owned by the corporation because taxes on that value had "always been paid exclusively to the town in which [the real estate was] situated." *Salem Iron Factory Co.*, 10 Mass. at 517. See *Worcester*, 184 Mass. at 463.

[14]The assessors point out that Verizon is classified as a utility corporation and that its annual State taxes are based solely on its Massachusetts income. See G. L. c. 63, § 52A(2); *Tenneco, Inc.* v. *Commissioner of Rev.*, 57 Mass. App. Ct. 42, 42 n.2 (2003). Compare G. L. c. 63, § 39. In their view, therefore, imposition of local taxes on personal property owned by utility corporations cannot possibly result in double taxation. Perhaps that is so. But the point is that the Legislature has paid careful attention to the question of double taxation as it has decided which tax revenues flow directly to localities and which are to be a component of general revenues. That careful attention leaves no room for inferring a legislative intent to allow local taxation of utility corporations because that local taxation, unlike local taxation of other corporations, creates no risk of double taxation. Nothing in a particular statute or in the legislative scheme as a whole supports such an inference, which, in any event, would wade far too deeply into the policy-making process to be justified as an exercise in statutory construction.

which the assessors rely, leads us to a contrary conclusion. There the court said that G. L. c. 59, § 18, First, and § 18, Second, were not mutually exclusive, with the consequence that certain machinery owned by the taxpayer, but not taxable under § 18, Second, could be taxed under § 18, First. Twice during the course of its opinion, however, the court noted that the taxpayer was not a corporation. *Id.* at 200, 206. The observation had consequences, for the taxpayer's lack of corporate status made it ineligible for the exemption from taxation contained in G. L. c. 59, § 5, Sixteenth. *Id.* at 207. Here, we are not faced with a question regarding the interplay between § 18, First, and § 18, Second. Instead, the applicability of § 18, First, to corporations is the issue, and Verizon is undeniably a corporation. *RCN*, therefore, does not contain a rule of decision applicable to this case.[15]

b. *Construction work in progress.* Given what we have said thus far, the issue of construction work in progress, or CWIP, can be dealt with more quickly. For the reasons expressed, we do not think that CWIP is taxable to corporations pursuant to c. 59, § 18, First. That leaves c. 59, § 18, Fifth, as a source of taxing power. To the extent that CWIP consists of "[u]nderground conduits, wires and pipes laid in public ways, . . . and poles, underground conduits and pipes, together with the wires thereon or therein, laid in or erected upon private property," it is taxable for the years in question. The meaning of the statutory terms presents a question of law, see *Commonwealth* v. *Vega*, 449 Mass. 227, 230 (2007) ("Statutory interpretation is a question of law. . . . As with any question of statutory interpretation, our starting point is the statutory text"), and nothing in the statute suggests that the poles, wires, or conduits must be "in service" before the taxing power attaches. Because the

---

[15]Nor do *Warner*, 396 Mass. at 241 n.3, or *Nashoba Communications, Ltd. Partnership* v. *Board of Assessors of Danvers*, 429 Mass. 126, 127 n.1 (1999), assist the assessors. Insofar as is here material, *Warner, supra* at 240-241, dealt with the scope of G. L. c. 59, § 18, Second, and *Nashoba, supra* at 127-128, with the reach of c. 59, § 18, Fifth. In both, the court observed that the assessors had made no argument that aerial plant on public ways could be taxed under the introduction to c. 59, § 18, or under § 18, First. *Id.* at 127 n.1. But an observation that an argument has not been made is just that. It is not an opinion that the argument is sound.

board approached the issue more globally, its findings are insufficient to allow us to determine whether and to what extent the valuation is limited to taxable components of Verizon's over-all CWIP.

The decision of the appellate tax board is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*